No. 23-1857

---

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

---

TANIKA PARKER and ANDREW FARRIER,
individually, and on behalf of all others similarly situated,
and on behalf of the DRiV 401(K) RETIREMENT SAVINGS PLAN, and on behalf of the TENNECO 401(K) INVESTMENT PLAN,
*Plaintiffs-Appellees,*

v.

TENNECO, INC.; DRiV AUTOMOTIVE, INC.; TENNECO AUTOMOTIVE OPERATING COMPANY, INC.; TENNECO BENEFITS COMMITTEE; FEDERAL-MOGUL CORPORATION; FEDERAL-MOGUL, LLC; FEDERAL-MOGUL POWERTRAIN, LLC; TENNECO BENEFITS & PENSION INVESTMENT COMMITTEE,
*Defendants-Appellants.*

---

Appeal from the United States District Court for the Eastern District of Michigan
District Court Case No. 23-10816, Denial of Motion to Compel Arbitration

---

**SUPPLEMENTAL BRIEF OF APPELLEES REGARDING**
*Cedeno v. Sasson*, 2024 WL 1895053 (2d Cir. May 1, 2024)

---

| | |
|---|---|
| Boyd A. Byers | E. Powell Miller |
| Scott C. Nehrbass | Sharon S. Almonrode |
| Foulston Siefkin LLP | Mitchell J. Kendrick |
| 1551 N. Waterfront Pkwy, Ste. 100 | The Miller Law Firm, P.C. |
| Wichita, KS 67206 | 950 W. University Dr., Ste. 300 |
| 316.291.9716 | Rochester, MI 48307 |
| | 248.841.2200 |

*Attorneys for Plaintiffs-Appellees*

The day before oral argument, the Second Circuit issued *Cedeno v. Sasson*, -- F.4th --, 2024 WL 1895053 (2d Cir. May 1, 2024). In a 2-1 decision, the Second Circuit affirmed the District Court's application of the effective-vindication doctrine to an arbitration provision nearly identical to the one at issue here, because it required the plan participant to forgo his statutory right to seek plan-wide relief under ERISA. In so doing, the Second Circuit joined the growing chorus of sister Circuit decisions applying the effective-vindication doctrine, the text of ERISA, and the Supreme Court's precedent in *Russell* and *LaRue* in similar fashion.

The Second Circuit's reasoning (like that of other Circuits) aligns with the reasoning of this Court in *Hawkins v. Cintas Corp.*, 32 F.4th 625 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 564 (2023). In *Hawkins*, the Court analyzed ERISA's text and the Supreme Court's decisions in *Russell* and *LaRue* to reiterate that 502(a)(2) claims are always brought in a representative capacity, on behalf of the plan. *See also, e.g.*, *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 825 (6th Cir. 2007) (stating that Section 502(a)(2) authorizes "derivative actions"). This panel should affirm the District Court's opinion here for the same reasons the Second Circuit affirmed in *Cedeno* and this Court affirmed in *Hawkins*.[1]

---

[1] In addition, as Judge McKeague observed during oral argument, the District Court is right for another reason. The plan amendment authority that the Tenneco Board delegated to the Administrative Committee was limited to amendments that are "technical in nature" or "necessary in the ordinary course of the administration of the Plan." No reasonable, thinking person would consider the sea-change sought by the arbitration amendment here -- imposing the Arbitration Procedure and imbedded Representative Action Waiver -- to be a merely "technical" or "necessary in the ordinary course of Plan administration" amendment.

The majority in *Cedeno* joined unanimous panels with a diverse array of jurists, including the following: Judges Chagares, Jordan, and Scirica (Third Circuit - *Henry*), Brennan, Scudder, and Kanne (Seventh Circuit - *Smith*), Bacharach, Briscoe, and Murphy (Tenth Circuit - *Harrison*). All of these courts correctly applied the effective-vindication doctrine to invalidate arbitration provisions that impermissibly attempted to waive substantive rights and remedies. None of these opinions held that there is a "conflict" between the Federal Arbitration Act and ERISA. Rather, the problem was (as it is here) with the specific arbitration provision that Defendants *chose* to draft. It is well settled under the Supreme Court's FAA jurisprudence that "the policy favoring enforcement of agreements *to arbitrate* does not automatically extend to enforcement of *any* provision within an arbitration agreement," and "terms in an arbitration agreement that have the effect of prospectively waiving a party's statutory remedies are not enforceable." *Cedeno*, 2024 WL 1895053, at *6 (emphasis in original). In *Cedeno*, as in this case, the arbitration provision was unenforceable not because it required arbitration in the first place, but rather because it contained a non-severable waiver of substantive remedies and the substantive right to bring any representative-capacity claim (whether in court or in arbitration). Specifically, the majority held that it was **impermissible for the arbitration provision to prevent Cedeno from pursuing remedies on behalf of the Plan and to restrict Cedeno's monetary remedies to his individual account**:

> [C]ontrary to Defendants' argument, Cedeno **cannot** vindicate his substantive statutory rights if Sections 17.10(f) and (g) are enforceable. Those provisions **take the only available statutory vehicle for vindicating Cedeno's rights under Section 409(a)**—a suit under Section 502(a)(2) seeking remedies directed at the Plan—**off the table**. The **alternative enforcement framework** spelled out in the arbitration agreement, which contemplates relief directed solely at Cedeno's account within the plan and allows recovery only of Cedeno's pro rata shares of a fiduciary's misbegotten gains, implicitly **rests on** the **fiction** that such a statutory enforcement mechanism exists. It doesn't. Nothing in Section 409(a) or 502(a)(2) allows a court or arbitral forum to **slice and dice** individual plan participants' and beneficiaries' injuries resulting from mismanagement by fiduciaries in the way Sections 17.10(g) and (f) suggest.

*Cedeno*, 2024 WL 1895053, at *14 (emphases added). The arbitration provision also impermissibly restricted Cedeno's ability to seek plan-wide equitable remedies authorized by Section 409. The same infirmities afflict the arbitration provision here.

The Second Circuit majority's opinion in *Cedeno* rests on the plain text of ERISA and the "foundation" of the Supreme Court's decision in *Russell*, plus *LaRue*. Again, this is precisely the same analysis that, in *Hawkins,* led this Court to conclude that the individual employee arbitration agreements were ineffectual because there was no Plan consent to those agreements. The claim "really 'belongs' to the Plan," not the individual. 32 F.4th at 632 (referring to common-law trust principles).

The Second Circuit concluded that "[b]ecause Cedeno's avenue for relief under ERISA is to seek a plan-wide remedy" (as is the "avenue for relief" pursued here) "and the specific terms of the arbitration agreement seek to prevent Cedeno from doing so" (as does the arbitration provision here) "the agreement is

3

unenforceable." 2024 WL 1895053, at *5. To "explain" its "conclusion," the Second Circuit considered "**controlling** Supreme Court caselaw establishing the framework that applies to claims under Sections 409(a) and 502(a)(2) of ERISA," and "the application of these legal principles to the arbitration provisions at issue in this case." *Id*. (emphasis added).

As to the FAA, the Second Circuit quickly dispensed with the appellant's (and the dissent's) notion that their holding creates a conflict with the FAA. *Id*. at *6. Using *Viking River* as its principal authority, as well as citing the Supreme Court's decisions in *Mitsubishi* and *14 Penn Plaza*, the Second Circuit found that "the FAA does not purport to reach agreements to waive *substantive rights and remedies*, and courts will invalidate provisions that prevent parties from effectively vindicating their statutory rights." *Id*. (emphasis in original).

> The Court [in *Viking River*] also made it clear that the policy favoring enforcement of agreements *to arbitrate* does not automatically extend to enforcement of *any* provision within an arbitration agreement. The Court explained that the basis of the principle that the FAA does not mandate enforcement of waivers of substantive rights is "that the FAA requires only the enforcement of 'provisions' to settle a controversy 'by arbitration,' and not *any* provision that happens to appear in a contract that features an arbitration clause."

*Id*. (citing and quoting *Viking River*, 596 U.S. at 653) (emphases in original). The Second Circuit found *Viking River* buttressed the holdings of sister Circuits because it "reemphasized that the FAA 'does not require courts to enforce contractual waivers

4

of substantive rights and remedies.'" *Id*. at *6. The court pointed to the Supreme Court's language in *Mitsubishi* declaring any such waiver **against public policy**:

> For that reason, terms in an arbitration agreement that have the effect of prospectively waiving a party's statutory remedies are not enforceable. As the Court noted in considering an arbitration agreement in *Mitsubishi*, "[I]n the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."

*Id*. at *6 (quoting *Mitsubishi*, 473 U.S. at 637 n.19). The court cited a long series of Supreme Court decisions, starting with *Italian Colors*, "**repeatedly recogniz[ing]** the general principle that provisions within an arbitration agreement that prevent a party from effectively vindicating statutory rights are not enforceable." *Id*. at *6 (emphasis added) (citing and quoting *Italian Colors*, *14 Penn Plaza*, *Green Tree Financial*, *Gilmer*, and *Mitsubishi*).

> The lesson from these binding decisions—that **courts will not enforce provisions in arbitration agreements that prevent a party from effectively vindicating their statutory rights and securing their statutory remedies**—critically informs our analysis here.

*Id*. at *7 (emphasis added). In order to honor – not deviate from the path of – these Supreme Court decisions, this Circuit should likewise apply this "critical lesson."

Applying the "lesson" to Mr. Cedeno's claims, the Court looked to (1) the "text of the [ERISA] statute" and (2) "two Supreme Court decisions," *Russell* and *LaRue*. *Id.* The Second Circuit found in these a "framework" for finding "that ERISA

5

contemplates plan-wide remedies, **and only plan-wide remedies**, to address certain breaches of fiduciary duties by plan fiduciaries." *Id*. (emphasis added).

The Second Circuit first looked at ERISA's plain text. Quoting Section 409, it placed emphasis on its repeated use of **"to such plan."** The Second Circuit found Sections 502(a)(2) and 409 "work in tandem" and "establish the vehicle" **empowering** plan participants to "bring civil actions against plan fiduciaries who breach their duties **to the plan."** *Id*. at *7 (emphasis added). Importantly, the Second Circuit acknowledged that other parts of ERISA "provide[] avenues for individual participants to pursue claims for other kinds of violations by plan fiduciaries," but stressed that 502(a)(2) is "**the** enforcement mechanism" for violations of Section 409(a), which reflects "'a special congressional concern about plan asset management'" and "'the proper management, administration, and investment of fund assets.'" *Id*. (emphasis added) (quoting parenthetically *LaRue*, 552 U.S. at 253 and *Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996)).

The Second Circuit characterized *Russell* as "foundational" for its decision. *Id*. at *8. "In *Russell*, the Supreme Court concluded that Section 502(a)(2) claims can only be brought to pursue relief on behalf of a plan[.]" *Id*. An individual cannot pursue a Section 502(a)(2) claim in an individual capacity on behalf of the individual; an individual can only bring a Section 502(a)(2) claim in a representative-capacity on behalf of the plan. The Court quoted Justice Stevens'

6

observations that ERISA's text "emphasized that the fiduciary was liable 'to make good *to such plan* any losses *to the plan* . . . and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan*'" and "makes it abundantly clear that its [drafters] were primarily concerned with the possible misuse of plan assets, and with remedies that would **protect the entire plan**, rather than with the rights of an individual beneficiary." *Id*. (quoting *Russell*, 473 U.S. at 140, 142) (final emphasis added).

The Second Circuit made quick work of any notion that *LaRue* weakened *Russell*'s foundation. *Id*. at *8-9. It contrasted the relief sought in *Russell*, an individual claim for "a delay in the processing of her claim," with the relief sought in *LaRue*, "that defendants failed to make certain changes to his investments," resulting in his interest "**in the plan**" being "depleted." *Id*. at *8 (emphasis added). LaRue's claim was for relief on behalf of the plan; Russell's was not. "The misconduct LaRue alleged fell 'squarely' within the category of breached fiduciary obligations **to the plan,**" but the relief sought by Russell fell squarely outside of it. *Id*. (emphasis added). Ultimately, the Second Circuit quoted *LaRue*'s holding:

> [A]lthough § 502(a)(2) **does not provide a remedy for individual injuries distinct from plan injuries**, that provision does authorize recovery for fiduciary breaches **that impair the value of plan assets** in a participant's individual account.

*Id*. at 28 (second emphasis added).

7

The majority found "the dissent's suggestion that *LaRue* in any way abrogated *Russell*'s holding" as "squarely at odds with the Supreme Court's own holding":

> At most, *LaRue* recognized that Section 502(a)(2) provides a remedy for injuries to the plan that are felt only at an individual account level; the Court did not suggest that Section 502(a)(2) allows individualized relief for injuries that are felt at the plan level.

*Id.* at *9. "[W]hether the injury **is felt** at the plan level or directly at the individual account level*," "such breaches are [] actionable under Section 502(a)(2)," but "502(a)(2) provides no remedy for individual injuries distinct from plan injuries." *Id*. (emphasis added). The claim made and relief sought is on behalf of the plan in a representative capacity, not the individual in an individual capacity.

The Second Circuit found "support" and "reinforce[ment]" in the opinions of its sister Circuits. *Id*. at *15 & n.6. Among those opinions was this Circuit's decision in *Hawkins*, with Judge Gibbons on the panel. *Id*. at *50 n.6.

The majority also relied on Second Circuit precedent following and applying the effective-vindication doctrine: *Gingras v. Think Finance, Inc*., 922 F.3d 112, 127 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 856 (2020). The Second Circuit has a prior-panel rule; the Sixth Circuit does as well. *Salmi v. Sec'y of Health & Human Servs*., 774 F.2d 685, 689 (6th Cir. 1985). And a prior Sixth Circuit panel has applied the effective-vindication doctrine. *Morrison v. Cir. City Stores, Inc*., 317 F.3d 646, 568 (6th Cir. 2003).

Finally, whether Section 409's provision of plan-wide remedies are "mandatory or permissive" does not change the outcome. As the *Smith* and *Harrison* decisions recognized, if an arbitration provision precludes relief that is permitted by a statute, the provision is unenforceable. *Harrison*, 59 F.4th at 1108 (holding arbitration an impermissible waiver of statutory remedies because "what the statute **permits**, the plan precludes.") (*quoting Smith*, 13 F.4th at 621). Nor does the injury-in-fact standing analysis in *Thole* require or suggest otherwise:

> That an individual must have a personal stake in the relief sought on behalf of the plan to have Article III standing for a suit under Section 502(a)(2) does not mean the plaintiff therefore litigates in an individual capacity to recover for the plaintiff's own individual injuries rather than in a representative capacity to secure relief for the plan.

*Cedeno*, 2024 WL 1895053, at *13 (addressing the dissent's discussion and application of *Thole v. U.S. Bank*, 590 U.S. 538, 543 (2020)). Even if a plan participant could, conceivably, request that fiduciaries restore less than "all plan losses caused by a fiduciary" (although it is difficult to imagine a reason or scenario where that would be appropriate), the claim for relief is still inherently representational and on behalf of the Plan, not on behalf of the individual. As this Court stated in *Hawkins* and Judge Stranch echoed at oral argument, Section 409 is a unique statutory relief mechanism, "designed for representative actions on behalf of the Plan." 32 F.4th at 635. Plainly and simply, Section "502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries." *LaRue*, 552 U.S. at 256.

9

## CONCLUSION

For all of the reasons stated above, the Court should affirm the district court's denial of Defendants' motion to compel arbitration.

<div style="margin-left: auto;">

Respectfully submitted by,

FOULSTON SIEFKIN LLP

*/s/ Scott C. Nehrbass*

Scott C. Nehrbass, KS #16285
7500 College Blvd., Ste. 1400
Overland Park, KS 66210
(P) 913.489.2100 | (F) 913.498.2101
snehrbass@foulston.com

Boyd A. Byers, KS #16253
1551 N. Waterfront Pkwy, Ste. 100
Wichita, KS 67206
(P) 316.291.9716 | (F) 316.267.6345
bbyers@foulston.com

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Mitchell J. Kendrick (P83705)
THE MILLER LAW FIRM, P.C.
950 W. University Dr., Ste. 300
Rochester, MI 48307
248.841.2200 | epm@millerlawpc.com
ssa@millerlawpc.com
mjk@millerlawpc.com

***Attorneys for Plaintiffs-Appellees***

</div>

## CERTIFICATE OF SERVICE

I certify that on May 13, 2024, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notifications to all counsel of record.

>  */s/ Scott C. Nehrbass*
> Scott C. Nehrbass, KS #16285